UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CHRIS DOE,**<br><br>　　　　　Plaintiff,<br><br>v.<br><br>**RUTGERS, THE STATE UNIVERSITY OF NEW JERSEY, and JEWELL BATTLE, IN HER OFFICIAL CAPACITY AS THE OPRA ADMINISTRATOR AND RECORDS CUSTODIAN OF RUTGERS UNIVERSITY,**<br><br>　　　　　Defendants. | Civ. No. 21-17811 (KM) (AME)<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

　　　　Plaintiff Chris Doe requested records from defendants Jewell Battle and Rutgers University (collectively "the University") related to his academic discipline under New Jersey's Open Public Records Act ("OPRA"). Rutgers provided some requested records, denied another request as overly broad, and informed plaintiff that it would only fulfill other requests if he paid several thousand dollars in "special service charges" to cover the cost of reviewing and redacting the personal information of other students from the documents. Plaintiff filed this case in the Superior Court of New Jersey, Middlesex County, Law Division and defendants timely removed to this court. I denied plaintiff's motion to remand. (DE 26.)[1]

---

[1]　　　　For ease of reference, certain key items from the record will be abbreviated as follows:

DE　　　　　　　=　　　　Docket entry in this case
Am. Compl.　　=　　　　State Court Amended Complaint (DE 1, Ex. B)

1

Now, defendants move jointly to dismiss this case (DE 16.) Doe cross-moves requesting that this court grant Doe the relief requested in the order to show cause that was filed in state court. (DE 21.) For the reasons set forth below, the motion to dismiss is GRANTED and Doe's cross-motion is DENIED.

**I.  Background**

Plaintiff Chris Doe was a student in the graduate school of business at Rutgers University – Newark from 2010 until 2017. (Am. Compl. ¶ 7.) It appears that Doe was subject to some type of academic discipline and he now seeks documents related to that discipline from the University. (*Id.* ¶ 12.) This lawsuit relates to two separate OPRA requests: A first request made on April 3, 2021 ("OPRA 1") and a second request made on April 13, 2021 ("OPRA 2"). (*Id.* ¶ 12, 31.) OPRA 1 contained four distinct elements, while OPRA 2 contained 3 elements. (*Id.*)

OPRA 1 requested: (1) academic records related to Chris Doe kept by five professors; (2) communication records related to Chris Doe sent or received by the same five professors; (3) the redacted discipline records of "any Rutgers Newark Graduate Student charged with a separable offense from 1/1/2015 to present"; and (4) emails related to one of Chris Doe's earlier 2018 OPRA requests. (*Id.* ¶ 12.)

OPRA 2 requested: (1) academic records related to Chris Doe kept by two additional professors from January 1, 2017 to present; (2) communication records related to Chris Doe sent or received by those two same professors; and (3) emails related to another one of Chris Doe's earlier OPRA requests. (*Id.* ¶ 31.)

The University, after some delay, responded to both requests. With regard to element (1) of OPRA 1, the University provided a number of responsive documents. (*Id.* ¶ 14, 15, 16.) With regard to element (2) of OPRA 1, the University identified 1,960 pages of responsive records, which needed to be reviewed and redacted. (*Id.* ¶ 30.) The University informed Doe on June 22, 2021 that it would only turn the records over if he paid a "special service

charge" of $2,025 to cover the 49 hours it would take to review and redact the documents. (*Id.*) It calculated that fee by estimating that it would take 49 hours to review the pages, at a rate of 40 pages per hour and that it would cost $45 per hour to do so, with the first four hours of review and redaction provided at no charge ($45 x 45 hours = $2,025). (*Id.* ¶ 30.) With regard to element (3) of OPRA 1, the University denied the request as overly broad. (*Id.* ¶ 14.) With regard to element (4) of OPRA 1, the University produced a heavily redacted 102-page record. (*Id.* ¶ 20.)

The University followed a similar course, with regard to the OPRA 2 request, which plaintiff filed on April 13, 2021. It produced several records related to element (1) of OPRA 2. (*Id.* ¶ 45.) With regard to element (2) of OPRA 2, the University informed Doe that one professor's emails were not on their IT system and thus could not be produced, and that the other professor's emails contained 4,608 pages of responsive documents. (*Id.* ¶ 46.) The University again informed Doe, this time on July 12, 2021, that it would only turn over the records if he paid a "special service charge" of $4,995 to cover the 116 hours it would take to review and redact the documents, calculated using the same formula as for OPRA 1 ($45 x 111 = $4,995). (*Id.*) The complaint is silent regarding the University's response to element (3) of OPRA 2.

The Amended Complaint challenges the University's response to three elements of these requests and makes an additional challenge to the response to a previous request. These are all pleaded in a single Count, which for clarity I divide into four notional Claims, as follows: "Claim 1" (as I call it) asserts that the denial of element (3) of OPRA 1 as overly broad violated OPRA. (*Id.* ¶ 54.) "Claim 2" asserts that the imposition of the special service charge related to element (2) of OPRA 1 was unreasonable under OPRA and violated the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g(a)(1) and its implementing regulations, 34 C.F.R. § 99.11. (*Id.* ¶ 58–59.) "Claim 3" asserts that the imposition of a special services charge related to element (2) of OPRA 2 was unreasonable under OPRA and violated FERPA. (*Id.* ¶ 58–59.) "Claim 4"

3

challenges the redaction of records provided to Doe in response to element (4) of his OPRA 1 request. (*Id.* ¶ 60–64.)

Doe filed this case in the Superior Court of New Jersey, Middlesex County, Law Division on August 26, 2021. (DE 2-2 ¶ 2.) The University removed the action to this court on September 29, 2021. (DE 1.) Doe moved to remand on October 8, 2021 (DE 2) and I denied that motion on March 2, 2022 (DE 26). On December 17, 2021, the University moved to dismiss Doe's case in its entirety. (DE 16.) Doe has cross-moved, requesting that this court grant the relief requested in an order to show cause that he filed in state court before the removal. (DE 21.) Doe relies on his briefing on the cross-motion as well as a short supplemental brief (DE 22) as his opposition to the motion to dismiss. The University filed a reply, reiterating its reasons for dismissal under both FERPA and OPRA and arguing that the relief requested by the state court order to show cause should not be granted. (DE 24.) This motion is now fully briefed and ripe for decision.

## II. Legal Standards

### A. Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Animal Sci. Prods., Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n.9 (3d Cir. 2011). For the purposes of a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *New Jersey Carpenters & the Trs. Thereof v. Tishman Constr. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014).

Federal Rule of Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will

not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570; *see also West Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 169 (3d Cir. 2013). That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' … it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

### III.  DISCUSSION

The University puts forward several arguments in support of its motion to dismiss and in opposition to Doe's cross-motion. I find that the University's arguments succeed and therefore GRANT the University's motion to dismiss the complaint and DENY Doe's cross-motion to grant the relief requested in the OTSC.

I begin by examining whether the claims related to OPRA 1 are time-barred. I find that they are, and therefore dismiss Claims 1, 2, and 4. With regard to OPRA 2, I find that the special services fee is not forbidden by FERPA and is reasonable under OPRA, and I therefore dismiss Claim 3.

### A. OPRA 1 (Claims 1, 2 and 4)

The University argues that claims related to the OPRA 1 request are time barred. (DE 16 at 26.) Doe does not contest this assertion in his briefing. I nevertheless examine the argument and find that the claims are indeed time-barred.

OPRA actions are subject to a 45-day statute of limitations. *Mason v. City of Hoboken*, 196 N.J. 51, 70 (2008). The New Jersey Supreme Court has explained that the extremely short timeframe is justified because "OPRA's framework calls for quick action in a number of areas" and it therefore requires disputes to be settled quickly. *Id.* at 69. The statute of limitations begins to run

5

when the OPRA custodian makes a decision that the plaintiff considers unfavorable. *Id.* at 70.

Here, the OPRA 1 request was first submitted on April 3, 2021. (Am. Compl. ¶ 12.) On April 14, 2021, the university provided some relevant documents but denied as overly broad the request for the records of other students charged with a separable offense. (*Id.* ¶ 14.) Doe argues that this was a denial of access in violation of OPRA. (*Id.* ¶ 54.) On June 22, 2021, after several deadline extensions, the University responded to Doe, informing him that it had located 1,960 pages of records and would require a $2,025 special services fee to review and redact those records before providing them to him. (*Id.* ¶ 30.) Doe argues that the imposition of this fee was a constructive denial of access in violation of OPRA and an unlawful act under FERPA. (*Id.* ¶ 58–59.) Doe then filed this lawsuit in New Jersey Superior Court on August 26, 2021. (DE 2-2 ¶ 2.) Sixty-five days elapsed between June 22, 2021, when the University rendered the last decision to which plaintiff objects, and August 26, 2021, when the plaintiff filed his state court action. Claims related to OPRA 1 were therefore filed outside the statute of limitations period.

In his supplemental brief (DE 22), Doe makes two arguments that his OPRA 1 claims are not be dismissed as time-barred. First he argues that the statute of limitations should be relaxed because the University previously gave itself extensions in responding to his requests. (*Id.* at 6–7.) Second, he argues that the April 3 and April 13 requests should be treated as a single request and that therefore the relevant date of denial was July 12, 2021, when Doe was informed of the special service charge related to OPRA 2. (*Id.*) Both of these arguments fail. Although it is true that Rutgers did delay in responding to Doe, once they did respond and deny his OPRA request, he was required to act within 45 days. The pre-denial delays had no effect on Doe's ability to file a timely suit, because the 45-day clock did not start running until the denial occurred. Doe does not argue that the University did anything to interfere with his ability to file suit that could theoretically entitle him to equitable tolling of

6

the statute of limitations. Second, it is clear that the two requests are separate. They are referred to separately in the Amended Complaint (Am. Compl. ¶ 12, 31) and they request different materials. For example, the requests for communication materials in OPRA 1 and OPRA 2 seek emails from different sets of professors.[2] (*Id.*). Although the two requests do, of course, both relate to the plaintiff's contentions, they were made separately and denied separately. The 45-day statute of limitations thus began to run for the April 3, OPRA 1 request the day that request was denied. Plaintiff himself claims that that denial consisted of the University's "constructive" rejection of the OPRA 1 request by imposing an excessive fee on June 22, 2021. Because the claims related to OPRA 1 were filed more than 45 days after that date. the claims related to OPRA 1 were filed untimely and must be dismissed.[3]

I therefore dismiss what I have labeled Claims 1, 2, and 4. *See* p. 3–4, *supra.*

### B. OPRA 2 (Claim 3)

I move on to Claim 3, relating to the OPRA 2 request.

Claim 3 is not time-barred. The OPRA 2 request was filed on April 13, 2021. Allegedly, it was constructively denied on July 12, 2021, when the University imposed an unauthorized special services fee as a condition of producing the documents. (Compl. ¶ 46.) Because July 12 is just 45 days before August 26, when the complaint was filed, Claim 3 was filed within the statute of limitations period. I therefore consider whether the complaint states a claim in relation to OPRA 2.

---

[2]  OPRA 1 requested emails from Dr. Edward Bonder, Dr. Wayne Eastman, Dr. Francis Bartkowski, Dr. Kinna Perry, and Dr. Kyle Farmbry. (Am. Compl. ¶ 12.) OPRA 2 requested emails from Dr. Daniel Wentzel and Dr. Sengu Yeniyurt. (*Id.* ¶ 31.)

[3]  It is not exactly clear what Claim 4 refers to. It appears to refer to redactions of documents provided in response to element (4) of OPRA 1, which requested emails related to the earlier 2018 OPRA request. This interpretation is bolstered by Doe's argument in his brief. (DE 23-3 at APX38–APX42.) Alternatively, it could refer to the redactions of a document produced by the University directly in response to the earlier 2018 OPRA request. Either way the claim is time-barred.

Doe claims that the imposition of the $4,995 special services fee (a) constitutes a constructive denial of access under OPRA, and (b) violates an implementing regulation of FERPA which states "An educational agency or institution may not charge a fee to search for or to retrieve the education records of a student." 34 C.F.R. § 99.11(b). Doe's brief in support of his state-court order to show cause argues both that the imposition of the special services fee violates FERPA's fee prohibition, and that it was an improper service charge under OPRA. (DE 23-3 at APX33–APX38.) I examine these two arguments in order.

*FERPA.* The University argues that the FERPA prohibition does not apply to Doe's request. The emails he requests, according to the University, are not "education records" within the meaning of FERPA and, even if they were, the fee was not imposed for the University to "search for or to retrieve" the records, but rather for the costs of reviewing and redacting private information from them.[4] (DE 16-2 at 15–25.) These arguments succeed.

FERPA defines education records as "files, documents, and other materials which (i) contain information directly related to a student; and (ii) are maintained by an educational agency or institution or by a person acting for such agency or institution."[5] 20 U.S.C. § 1232g(a)(4)(A). The University cites several cases holding that emails between faculty members were not "education records" under the meaning of FERPA because they are not maintained in a centralized manner by a single custodian. *See, e.g., S.A. ex rel. L.A. v. Tulare Cnty. Off. of Educ.*, No. CVF 08-1215 LJO GSA, 2009 WL 3126322, at *6 (E.D. Cal. Sept. 24, 2009) (quoting *Owasso Indep. Sch. Dist. No. I–011 v. Falvo*, 534

---

[4]   In addition, the University briefly argues that FERPA does not provide a private right of action. (DE 16-2 at 25–26.) Because I find that the University's argument about the meaning of FERPA succeeds I do not address this secondary argument.

[5]   The statute also states that education records does not include "records of instructional, supervisory, and administrative personnel and educational personnel ancillary thereto which are in the sole possession of the maker thereof and which are not accessible or revealed to any other person except a substitute." 20 U.S.C. § 1232g(a)(4)(B)(i).

8

U.S. 426, 434-45 (2002)); *E.D. by & through T.D. v. Colonial Sch. Dist.*, No. CV 09-4837, 2017 WL 1207919, at *10 (E.D. Pa. Mar. 31, 2017) ("Unless Defendant kept copies of e-mails related to [plaintiff] as part of its record filing system with the intention of maintaining them, we cannot reach the conclusion that every e-mail which mentions [plaintiff] is a bona fide education record within the statutory definition.") Here, Doe has not alleged that the emails were maintained in a centralized database by the university. Rather, it appears that the emails were kept on an email server from which they could be deleted by the professors who sent and received them.[6] I therefore find that the emails requested by Doe in OPRA 2 are not education records under FERPA. It follows that FERPA's prohibition on charging fees does not apply.[7]

*OPRA.* Doe also argues, without reference to FERPA, that the imposition of the special service charge was unreasonable under OPRA itself. OPRA provides that if "an extraordinary expenditure of time and effort" is required "to accommodate the request, the public agency may charge, in addition to the actual cost of duplicating the record, a special service charge that shall be reasonable and shall be based upon the actual direct cost of providing the copy or copies." N.J. Stat. Ann. § 47:1A-5(c). Here, the University has plausibly explained the thousands of pages of emails requested by Doe contain privileged information and the private information of other students. Therefore, says the University, it was necessary to review and redact those records. (Am. Compl. ¶ 46.) The University laid out exactly how much it would cost to review these documents, and even provided the initial four hours of review and redaction

---

[6] Doe himself does not appear to have regarded these emails as academic records. The first element of his OPRA requests asks for "academic records." The emails, however, he requests separately as "communication records." (Am. Compl. ¶ 31.)

[7] Even assuming *arguendo* that the emails were education records, the special services fee was not assessed for searching or retrieving the records. 34 C.F.R. § 99.11(b). The records had already been located by the custodian; the University charged the special services fee to review, redact, and copy the records and provide them to plaintiff. Copy fees are permitted under FERPA; redaction fees are not addressed by the statute or its regulations. 34 C.F.R. § 99.11(a).

free of charge. (*Id.*) The University informed Doe his insistence on searching for his initials, turned up a large number of irrelevant emails, but Doe refused to modify his search request. (DE 16 at 8–9.)

Doe argues that the fee is unreasonable because the University "fail[s] to identify the position and salary of the employee who would have the minimum requirements hourly pay rate to perform the search." (DE 21-3 at APX37.) Doe, however, identifies no statutory requirement that the University specify the qualifications of the employee who is charged with reviewing and redacting the documents. The rate of $45 per hour for such specialized and tedious work does not strike the Court as *per se* unreasonable; more to the point, Doe has pointed to no authority for finding it unreasonable.[8]

I find that the imposition of the special service charge comported with the requirements of OPRA and therefore will dismiss Claim 3.

### C. Order to Show Cause

Finally, Doe argues that the relief requested by his Order to Show Cause ("OTSC"), which was filed in state court before this action was removed, should be granted because the University has not responded to it and Doe claims that the OTSC has therefore automatically gone into effect. (DE 22 at 2–3.) The University argues that the request for an OTSC became a nullity because it was not renewed in federal court after removal. (DE 24 at 10.) I agree with the University that L. Civ. R. 65.1(a) requires that a party seeking an OTSC renew its motion in federal court after removal. *See Jenkinson's Pavilion v. Borough of Point Pleasant Beach*, 2021 U.S. Dist. LEXIS 79317, at *8 n.3 (D.N.J. Apr. 26, 2021). Even if Doe's cross-motion is treated as a renewal of the OTSC, a

---

[8]    Doe initially argued that the emails should be turned over pursuant to the Appellate Division's order to turn over Doe's own discipline records, as opposed to those of other students. *Doe v. Rutgers State Univ. of New Jersey*, 466 N.J. Super. 14, 25 (App. Div. 2021). He appears to have abandoned that argument. (DE 22 at 6 ("here Doe is not seeking enforcement of the Appellate Division remand order for access to his discipline records without a OPRA service charge").) Regardless, Doe has not demonstrated that these communication records should be considered "discipline records."

considerable stretch, the OTSC would necessarily be denied on the merits, because it depends on the same contentions rejected above in connection with my dismissal of the complaint. To remove doubt, the complaint is dismissed and the OTSC is dissolved.

## IV. Conclusion

For the reasons set forth above, defendants' motion to dismiss (DE 16) is GRANTED and Doe's cross-motion for the relief requested in the order to show cause (DE 21) is DENIED and the Order to Show Cause is dissolved. A separate order will issue.

Dated: May 20, 2022

/s/ Kevin McNulty

_____

**Kevin McNulty**
**United States District Judge**